STATE OF CONNECTICUT *v.* EDWARD P. LYNCH
(AC 29622)

DiPentima, C. J., and Harper and Robinson, Js.

480

Argued April 9—officially released August 31, 2010

*Hope C. Seeley*, with whom, on the brief, was *Benjamin B. Adams*, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Lisa Herskowitz*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Edward P. Lynch, appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and public indecency in violation of General Statutes § 53a-186 (a) (2). On appeal, the defendant claims that (1) the trial court improperly admitted irrelevant and prejudicial evidence of prior uncharged misconduct, (2) the court deprived him of his right to due process by failing to issue, sua sponte, a limiting instruction immediately after admitting the prior misconduct evidence, and that the court's limiting instruction was deficient, (3) the court denied him his right to due process by failing to declare a mistrial after the prosecutor referenced prejudicial and irrelevant aspects of the defendant's prior misconduct that the court had excluded from evidence, and (4) prosecutorial impropriety during closing argument deprived him of his right to due process. We disagree, and, accordingly, affirm the judgment of conviction.

The jury reasonably could have found the following facts. In June, 2006, the defendant lived in a home adjacent to, and in very close proximity with, the eight year old victim's[1] home in East Hartford. The defendant's home had a deck accessible by a full length, clear glass door that provided an unobstructed, direct view to a children's inflatable play pool in the victim's backyard. The view from the glass door was such that one could

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

see clearly a person standing in the victim's backyard, and a person standing in the victim's backyard could see clearly through the defendant's glass door into the defendant's kitchen.

On June 20, 2006, the victim was at home being supervised by her babysitter. Sometime during the afternoon, the victim was left unattended briefly while she was playing in the children's pool located in the backyard of her home. At this time, the victim noticed the defendant standing naked while inside the glass door to the deck. The defendant looked at the victim and began "scratching, rubbing, and pulling" his "private part" for several minutes before the victim left the pool to notify her babysitter, who then telephoned the victim's mother at work. The victim's mother immediately called 911.

After interviewing the mother and the victim, two East Hartford police officers visited the defendant's home to further investigate the incident. The defendant answered the front door wearing only a towel and promptly admitted to standing naked in the glass doorway. The officers arrested the defendant, and he was charged with risk of injury to a child and public indecency.

A jury trial commenced on November 14, 2007. During the trial and outside the presence of the jury, the state proffered evidence of an incident of the defendant's prior misconduct through the testimony of three individuals to prove the intent element of the public indecency charge.[2] Melinda Rivera testified that on the evening of August 16, 2001, she visited her mother-in-law who lived on the ground floor of a home immediately next to that of the defendant. Rivera testified that while using the bathroom, she looked out the window and briefly made eye contact with a man dressed in a

---

[2] Prior to the start of trial, the defendant filed a motion in limine seeking to preclude all evidence of prior uncharged misconduct.

wig and women's clothing who was standing on the defendant's deck. This individual smiled at Rivera, exposed his penis and began masturbating, at which point Rivera left the bathroom and called the police. Rivera further testified that she was unable to identify the man she saw masturbating. The police, however, returned after interviewing the defendant that night and showed Rivera articles of clothing that she identified as those the man on the deck was wearing.

Stephen Grossi, the East Hartford police officer who responded to Rivera's call, testified to having interviewed the defendant as part of the investigation of the incident. During the initial interview, the defendant admitted to possessing a wig and women's clothing and retrieved them from his truck to show Grossi. Grossi took this clothing into custody and showed it to Rivera, who verified it was the same clothing that she had seen the man on the deck wearing.

Finally, John Rinaldi testified that he had lived with the defendant since November, 1997, at his home in East Hartford and that only the two of them were living in this home on the night of August 16, 2001. Rinaldi further testified that on the night of August 16, 2001, he did not masturbate on the deck and that he did remember the police coming to his home that night.

The state proffered this testimony to establish the defendant's intent to arouse or satisfy his sexual desires on June 20, 2006, an element of the public indecency charge. The court found that the evidence of prior uncharged misconduct was probative of the defendant's intent on June 20, 2006. The court further concluded, however, that any detailed reference to the women's clothing or the wig would result in unfair prejudice to the defendant. Accordingly, the court allowed the evidence of the defendant's prior misconduct to be heard by the jury but prohibited counsel or witnesses

from describing the clothing worn by the defendant with any particularity, other than to say he wore "distinctive clothing" or was "scantily clad." The jury then heard this same testimony from Rivera, Grossi and Rinaldi without any reference to a wig or women's clothing. Thereafter, the jury found the defendant guilty on both counts, and the court sentenced the defendant to seven years imprisonment, execution suspended after two years, with sex offender registration required for ten years. This appeal followed.

I

The defendant first claims that the court improperly admitted irrelevant and prejudicial evidence of prior uncharged misconduct. Specifically, the defendant contends that the court improperly admitted the testimony of Rivera, Grossi and Rinaldi as evidence of the defendant's intent to arouse or satisfy his sexual desires on June 20, 2006, an element of § 53a-186 necessary for conviction of public indecency. The defendant argues that the testimony was inadmissible because (1) it failed to establish sufficiently that he was the individual who committed the prior uncharged misconduct, (2) the prior uncharged misconduct was irrelevant to his intent on June 20, 2006, and (3) its probative value was outweighed by its prejudicial effect. We are not persuaded.

We begin our analysis by setting forth the well settled standard of review. "Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an

exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Millan*, 290 Conn. 816, 830–31, 966 A.2d 699 (2009).

## A

The defendant first argues that the testimony of Rivera, Grossi and Rinaldi failed to establish sufficiently that he was the individual who committed the prior uncharged misconduct. The defendant directs our attention to *State* v. *Wilson*, 199 Conn. 417, 449, 513 A.2d 620 (1986), and asserts that evidence of prior uncharged misconduct only can be relevant if the evidence is first shown sufficient to establish that the defendant, in fact, committed the prior act. The defendant refers to the fact that Rivera never was able to actually identify the man she saw masturbating on the defendant's deck the night of August 16, 2001, and argues that her subsequent identification of cross-dressing paraphernalia that was turned over by the defendant was so tenuous an identification that the court abused its discretion by determining the evidence to be probative. We disagree.

In *Wilson*, the defendant appealed from his conviction of manslaughter in connection with the death of his girlfriend's baby daughter, claiming that the trial court improperly had admitted evidence of prior injuries sustained by the victim without first establishing

that the defendant caused these injuries. Id., 448. On appeal, our Supreme Court determined that the trial court improperly admitted evidence that at the time of the victim's death she had several broken ribs and a kidney injury that she had suffered two weeks previous because "[t]here was nothing in the record to indicate how or by whom these injuries were caused." Id., 449. In so holding, our Supreme Court stated that "before [uncharged prior misconduct] evidence can have *any* probative value, there must be a preliminary showing sufficient to support a jury finding that the defendant, in fact, caused the prior injury. The evidence of causation may be circumstantial or direct." (Emphasis in original.) Id.

The facts of this case are distinguishable from *Wilson*. The record shows that the testimony provided by Rivera, Grossi and Rinaldi cumulatively established that (1) a man wearing articles of distinctive clothing previously had been seen masturbating on the defendant's deck, (2) the articles of distinctive clothing worn by this man were owned by the defendant, and (3) the defendant's roommate, who was the only other individual living at the home at that time, was not the man on the deck. Furthermore, the court made the specific finding that the defendant had engaged in this prior misconduct.[3]

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue.

---

[3] The court stated: "In this case, the court finds under the proffer made by the state that the misconduct evidence in question is evidence that on an evening approximately five years prior to the conduct that forms the basis of this case, the defendant was on his back porch, at his home, at his residence and was dressed in what might be described as women's clothing; that on that occasion, he, a neighbor was looking out the window toward the back porch; the back porch light was on. The neighbor said that, testified, and the court finds for this purpose that eye conduct was made between the defendant and the eyewitness. And once the defendant realized that he was being watched, he began, he removed his penis from his clothing and began to masturbate."

. . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree . . . ." (Internal quotation marks omitted.) *State* v. *Allen*, 289 Conn. 550, 562, 958 A.2d 1214 (2008). We conclude that this testimony constituted sufficient circumstantial evidence to permit a reasonable inference that the defendant committed the prior act and, therefore, the court did not abuse its discretion. See, e.g., *State* v. *Nunes*, 260 Conn. 649, 682–89, 800 A.2d 1160 (2002) (determining that testimony of prior misconduct reasonably permitted inference that defendant previously administered chloral hydrate despite lack of evidence showing defendant actually administered drugs or there were drugs in witness' system).

B

The defendant next claims that the court abused its discretion in determining that the evidence of prior uncharged misconduct on August 16, 2001, was relevant to his intent on June 20, 2006. Because we conclude that the defendant waived this claim at trial, we decline to reach its merits.

The following additional facts are relevant to our analysis of the defendant's claim. On November 7, 2007, the defendant filed a motion in limine to preclude the state from introducing evidence of uncharged misconduct by the defendant. The state sought to introduce testimony regarding the 2001 incident to show the specific intent to arouse a sexual desire, an element necessary to support a conviction for a violation of the public indecency statute. The state also argued that this evidence was relevant to show that the defendant knew that he could be seen by the neighbors next door.

The court then heard testimony from Rivera, Grossi and Rinaldi outside of the presence of the jury. The state argued that the three witnesses established that

the defendant was the person in the 2001 incident and that it was relevant to show his intent with respect to the 2006 charges, specifically, the intent necessary to commit a violation of § 53a-186.[4]

Defense counsel argued that the state had failed to establish that the defendant had been engaged in the misconduct that occurred in 2001. The following colloquy then ensued:

"[Defense Counsel]: First . . . [the question is] whether or not it is, in fact, the defendant. The next question is, again, look at the prejudicial fact as to probative value. It should go to prove that he, in fact, lived this offense. The state is saying it's relevant because it shows his intent.

"The Court: Are you talking about prejudicial effect or relevance, at this point?

"[Defense Counsel]: I'm talking about prejudicial effect.

"The Court: All right, do you con—

"[Defense Counsel]: I would concede, Your Honor, that if, in fact—

"The Court: Can I ask you the question?

"[Defense Counsel]: Sure. Go ahead.

"The Court: Would you concede that if there was uncontroverted, indisputable evidence that it was the defendant who was engaged in this conduct in 2001,

---

[4] General Statutes § 53a-186 (a) provides: "A person is guilty of public indecency when he performs any of the following acts in a public place: (1) An act of sexual intercourse as defined in subdivision (2) of section 53a-65; or (2) a lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person; or (3) a lewd fondling or caress of the body of another person. For the purposes of this section, 'public place' means any place where the conduct may reasonably be expected to be viewed by others."

that it would be relevant, it would meet a threshold relevance test as to intent under the public indecency statute regarding the act charged in 2006?

"[Defense Counsel]: Threshold, yes.

"The Court: All right. So, now we're on to prejudice.

"[Defense Counsel]: Exactly.

"The Court: Okay. Talk to me about prejudice."

The court then indicated it was required to balance the relevance of the evidence with its prejudicial impact. It then explained what constituted unduly prejudicial evidence, and defense counsel agreed with the court's description.[5] The following colloquy then ensued:

"The Court: So, tell me how [the prior misconduct testimony unfairly prejudices the defendant].

"[Defense Counsel]: Well, if we do that, Your Honor, you have to take the entire thing together; that we get into the dressing up, that we get into all of the other dissimilarities. . . . But what it boils down is that if he, in fact, committed an act, i.e., masturbation, then, that he must have been doing it this time when we got an eight year old girl out by a pool, not at nighttime, and a whole host of different circumstances. A doesn't lead to B. And that's where the prejudicial effect of it is."

---

[5] The following colloquy occurred:

"The Court: . . . And the courts have been clear that prejudice doesn't mean any evidence that's going to harm the defendant.

"[Defense Counsel]: Most evidence that the state would allow would harm the defendant. I understand that.

"The Court: The issue is whether or not it's unduly prejudicial on that side of the balance, and whether or not it's unduly prejudicial is whether or not it so arouses the passions of the jury or inflames the passion or feelings of the jury that they can't look at the evidence fairly. Would you agree that that's the general test?

"[Defense Counsel]: Correct."

The court stated then it was "inclined to disagree" with defense counsel's argument on the prejudice prong. The court also informed the parties of its concerns that the evidence of the defendant in women's clothing would be unduly prejudicial. Defense counsel noted his agreement with the court's concerns.

The following day while ruling on the admissibility of the evidence and after finding that the defendant had been the actor in the prior misconduct, the court acknowledged defense counsel's concession, stating that "[t]he court finds, *and the defendant's counsel concedes*, that [the testimonial evidence] is probative of the defendant's 2006 intent to arouse or satisfy his sexual desire under the public indecency statute, which is count one of the information." (Emphasis added.) Defense counsel then made a general objection to the court's ruling on the admissibility of the evidence.

"[W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . *In determining waiver, the conduct of the parties is of great importance.* . . . [W]aiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . . Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 449, 978 A.2d 1089 (2009).

The defendant argues that defense counsel did not concede that the testimonial evidence was probative of intent; rather, he "merely conceded that the evidence may be relevant to prove the defendant's propensity to engage in conduct, which he then argued was an inappropriate basis for admission under the circumstances . . . ." Additionally, at oral argument before

this court, the defendant asserted that while discussing relevance, the judge and defense counsel were like "two ships passing in the night," and, as a result, defense counsel did not intentionally waive his objection to the testimonial evidence on the ground of relevance. We disagree.

The record shows that in defense counsel's initial argument, he challenged whether the defendant had been involved in the 2001 incident, discussed the issue of prejudice and bypassed the topic of relevancy. More importantly, the court put forth a very clear and concise question seeking to clarify defense counsel's position on the relevance of the prior uncharged misconduct evidence. In reply, defense counsel clearly acknowledged that the evidence met the threshold relevance inquiry with respect to the intent exception found in § 4-5 (b) of the Connecticut Code of Evidence and agreed with the court that the next step was to evaluate its prejudicial effect. During the ensuing discussion, the court continually made references to the issue of prejudice and did not return to the issue of relevancy. Finally, when the court issued its ruling, it explicitly referred to the defendant's concession regarding relevancy. The defendant never raised a specific objection to the court's ruling. "When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.) *State* v. *Foster*, 293 Conn. 327, 337, 977 A.2d 199 (2009). We therefore decline to review this claim on the merits.

C

The defendant next claims that the court abused its discretion by determining that the probative value of the evidence of prior uncharged misconduct outweighed its prejudicial effect. We disagree.

The following additional facts are relevant to our decision. After hearing the proffer of testimonial evidence and argument from counsel regarding its relevance and prejudicial effect, the court determined that "the fact that the defendant began to masturbate on his back porch once he knew a neighbor was watching is not in and of itself unduly prejudicial because it will not so arouse or inflame the jury's passions that they could not fairly evaluate the evidence in the case." Recognizing that knowledge of the fact that the defendant was wearing women's clothing while so doing "would inject an additional amount of prejudice into the case," the court ordered the state to "sanitize" the evidence by refraining from referring to the "clothing in any particularity . . . ."

We begin our analysis of the defendant's claim by restating the well settled standard of review. "The trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . We note that [b]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Sweeney*, 104 Conn. App. 582, 590, 935 A.2d 178 (2007). "Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *McClelland*, 113 Conn. App. 142, 153, 965 A.2d 586, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009).

"Moreover, [w]hen the trial court has heard a lengthy offer of proof and arguments of counsel before performing the required balancing test, has specifically

found that the evidence was highly probative and material, and that its probative value significantly outweighed the prejudicial effect, and has instructed the jury on the limited use of the evidence in order to safeguard against misuse and to minimize the prejudicial impact . . . we have found no abuse of discretion . . . ." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 532, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007).

In the present case, the court heard significant proffered testimony from the state's three witnesses and heard from counsel for both parties with respect to the relevance-prejudice balance. The court found the evidence relevant, recognizing specifically in its ruling that defense counsel also had acknowledged this. Then, finding a potential for undue prejudice, the court limited any reference to the specific aspects of the evidence that threatened to arouse the emotions of a juror. Finally, during the jury charge, the court issued a clear limiting instruction to further minimize any unfair prejudice.[6] "Absent evidence to the contrary, we presume

---

[6] The court instructed the jury, in relevant part, as follows: "In this case, the state offered evidence that the defendant engaged in prior misconduct in 2001. This evidence was not admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts. Such evidence was admitted solely for the purpose to show or establish that the defendant had the intent in 2006 to arouse or satisfy his sexual desire by lewdly exposing his body. Such intent is a necessary element of the crime of public indecency. . . .

"You may not consider the 2001 misconduct evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. You may consider the evidence if you believe it, and further find [that] it logically, rationally and conclusively supports the issue for which it is being offered by the state, that is, the defendant's intent in 2006. On the other hand, if you do not believe the misconduct evidence, or even if you do, if you find that it does not rationally, logically and conclusively support the issue for which it is being offered by the state . . . then you may not consider that testimony for any purpose."

that the jury followed the court's limiting instruction." *State* v. *Messam*, 108 Conn. App. 744, 758, 949 A.2d 1246 (2008). We do not conclude that under these circumstances the court abused its discretion.

## II

The defendant next claims that the court deprived him of his right to due process by failing to issue, sua sponte, a limiting instruction immediately after admitting the prior misconduct evidence. Additionally, the defendant claims that the limiting instruction that the court issued later was constitutionally deficient. Recognizing that these claims were not preserved, the defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), the plain error doctrine; see Practice Book § 60-5; or our supervisory authority over the administration of justice. We decline to review the defendant's first claim because he induced the very act he claims is error. We further conclude that the defendant's second claim fails under *Golding* and that he is not entitled to extraordinary relief.

The following additional facts are pertinent to our analysis. After the court determined that the evidence of prior uncharged misconduct was admissible, defense counsel then asked the court whether there was to be "at some point in [the] charge, some sort of a limiting instruction." The court replied that it would give a limiting instruction, stating specifically that the jury would be instructed that the prior uncharged misconduct evidence is "not to be used to prove the criminal tendencies or bad character of the defendant . . . [and is] to be used only to assist the jury in deciding whether or not the defendant had the requisite intent to arouse his sexual, to arouse himself sexually regarding the 2006 incident." Defense counsel expressed his satisfaction with a "[t]hank you." After a recess, the jury returned and heard the testimony from Rivera, Grossi and

Rinaldi. At no point during or after the proffered testimony did defense counsel raise an objection to the lack of any limiting instruction.

At the close of trial and outside the presence of the jury, the court summarized on the record a charging conference that had been held in chambers, announcing that at "defense counsel's request, I am giving a charge on prior misconduct evidence," stating with specificity the scope and detail of the limiting instruction that the jury would hear in the court's jury charge. Asked if he wanted anything put on the record with respect to the charging conference, defense counsel stated, "no, Your Honor." Thereafter, the jury returned, and the court gave the limiting instruction.[7]

## A

The defendant contends that his claim is entitled to review because it was not waived at trial. Specifically, the defendant argues that his request that the court give the limiting instruction "at some point in [the court's] charge" was not precise enough to constitute an affirmative waiver, and because he did not request expressly that the instruction not be given earlier, he is now entitled to review. We disagree.

We find our Supreme Court's holding in *State* v. *Gibson*, 270 Conn. 55, 850 A.2d 1040 (2004), to control our resolution of the defendant's claim. In that case, the defendant sought review of his conviction pursuant to *Golding*, claiming that the lack of any limiting instruction with respect to admitted evidence of prior misconduct compromised his fourteenth amendment due process right to a unanimous verdict. Id., 64. At trial, however, the defendant declined the court's offer to issue a limiting instruction and, thereafter, consistently

[7] See footnote 6 of this opinion for the substance of the court's limiting instruction.

failed to raise an objection or otherwise seek a limiting instruction. Id., 68. Our Supreme Court concluded that "any error stemming from the trial court's failure to give a limiting instruction on the uncharged misconduct evidence was induced because the defendant encouraged or prompted the court to refrain from giving such an instruction . . . ." Id.

In the present case, defense counsel's request and subsequent acts similarly "encouraged or prompted" the court to refrain from giving an immediate limiting instruction. Defense counsel requested that a limiting instruction be issued in the court's "charge . . . ." It was reasonable for the court to interpret defense counsel's request as seeking a limiting instruction specifically during the court's final jury charge. Indeed, after his request, defense counsel acted in a manner entirely consistent with such an interpretation, as he failed to object when testimony was heard by the jury without an immediate limiting instruction and then failed to have an objection put on the record with respect to the charging conference prior to the jury charge.

"An appellant cannot ordinarily claim error in the action of the trial court which he has induced." *State v. Ross*, 189 Conn. 42, 47, 454 A.2d 266 (1983). To allow the defendant to request a limiting instruction at some point during the court's "charge" and then later appeal because the limiting instruction was issued during the jury charge and not immediately following the admission of the evidence to which it applied "would amount to allowing him to induce potentially harmful error, and then ambush the state [and the trial court] with that claim on appeal." (Internal quotation marks omitted.) *State v. Fabricatore*, 281 Conn. 469, 480–81, 915 A.2d 872 (2007).[8]

_____

[8] The defendant also invites this court to adopt a "per se rule requiring that when evidence of uncharged misconduct is admitted for a limited purpose, the trial court must be required to immediately instruct the jury on the exact nature of that limited purpose." We previously have stated that

Having concluded that the defendant induced the act he now claims deprived him of a fair trial, we further determine that review under *Golding* is precluded.[9] See *State* v. *Cruz*, 269 Conn. 97, 104, 848 A.2d 445 (2004) ("*Golding* analysis cannot be used to review unpreserved claims of induced error regardless of the alleged constitutional nature of the error"). Additionally, the failure of the court to give, sua sponte, a limiting instruction immediately, when not required to do so by statute, rule of practice or the constitution, and when counsel asked for it "at some point in Your Honor's charge," is not such a truly extraordinary situation implicating the fairness and integrity of judicial proceedings.[10] Likewise, we decline to invoke our supervisory powers.[11]

"[i]t *is well established in Connecticut . . . that the trial court generally is not obligated, sua sponte, to give a limiting instruction.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 70, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005). Accordingly, we decline to adopt such a rule.

[9] We note for clarification that even in the absence of a conclusion that the defendant induced the very act he alleges was improper, he would not be entitled to *Golding* review of his claim. See *State* v. *Dews*, 87 Conn. App. 63, 75, 864 A.2d 59 ("[A]s a general rule, the failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude. . . . [Accordingly], it would follow that the claimed failure to give an *adequate* limiting instruction likewise is not of constitutional magnitude." [Citation omitted; emphasis in original; internal quotation marks omitted.]), cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

[10] "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 183, 920 A.2d 236 (2007). "The failure by the trial court to give, sua sponte, an instruction that the defendant did not request, that is not of constitutional dimension and that is not mandated by statute or rule of practice is not such an obvious error that it will affect the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.). *State* v. *Dews*, 87 Conn. App. 63, 70, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

[11] "[O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.)

## B

We turn now to the defendant's next claim that the limiting instruction that the court gave during the jury charge was constitutionally inadequate. The defendant admits this claim was not preserved and, therefore, seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. In reply, the state asserts that the defendant's claim fails under the second prong of *Golding* because claims of error in the context of limiting instructions are not of constitutional magnitude. We agree with the state.

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . [A reviewing] court may dispose of the claim on any one of the conditions that the defendant does not meet." (Internal quotation marks omitted.) *State* v. *Cruz*, supra, 269 Conn. 104.

*State* v. *Mukhtaar*, 253 Conn. 280, 290 n.11, 750 A.2d 1059 (2000). "[O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle." (Internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 518 n.23, 973 A.2d 627 (2009). Neither is it "a last bastion of hope for every untenable appeal. [It is] an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Emphasis in original; internal quotation marks omitted.) *State* v. *Cote*, 101 Conn. App. 527, 539, 922 A.2d 322, cert. denied, 284 Conn. 901, 931 A.2d 266 (2007).

"[T]he failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude." (Internal quotation marks omitted.) *State* v. *Ortiz*, 40 Conn. App. 374, 381, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). Accordingly, absent a claim of constitutional dimension, the defendant's unpreserved claim fails to satisfy the second prong of *Golding* and is not reviewable. See *State* v. *Atkins*, 118 Conn. App. 520, 535, 984 A.2d 1088 (2009), cert. denied, 295 Conn. 906, 989 A.2d 119 (2010).

We also conclude that the defendant's claim is not amenable to review pursuant to the plain error doctrine or our supervisory powers. We cannot conclude that the limiting instruction given by the court in the present case is one of the "truly extraordinary" situations affecting the fairness and integrity of judicial proceedings. See *State* v. *Cutler*, 293 Conn. 303, 326, 977 A.2d 209 (2010). Nor can it be said to implicate the fairness of the judicial process as a whole. See *State* v. *Cote*, 101 Conn. App. 527, 539, 922 A.2d 322, cert. denied, 284 Conn. 901, 931 A.2d 266 (2007).

### III

The defendant next claims that the court denied him the right to due process by failing to declare a mistrial after the prosecutor referenced prejudicial and irrelevant aspects of his prior misconduct that the court had precluded from evidence. Specifically, the defendant asserts that the prosecutor exceeded the scope of the court's order not to reference with any particularity the wig or women's clothing worn by the defendant during his prior uncharged misconduct by asking Rivera during direct examination if the man she saw that night was wearing "normal" clothing. We do not agree.

The following additional facts are relevant to our analysis. After ruling that the proffered testimonial evidence of the defendant's prior uncharged misconduct

was admissible, the court attempted to limit the prejudicial effect of the evidence by instructing the parties not to refer to the wig or the women's clothing that the defendant was wearing with "any particularity other than to say it was distinctive clothing, or that the defendant was scantily clad." Thereafter, in seeking to establish how Rivera was able to identify the defendant as the man wearing the wig and women's clothing, the prosecutor asked Rivera if "that person who you saw was wearing 'normal' clothing." Rivera responded, "no, he was not."

After cross-examining the witness, defense counsel objected to the prosecutor's use of the term "normal" and moved the court to declare a mistrial. In the alternative, defense counsel also moved the court to instruct the jury to disregard all evidence of prior uncharged misconduct, arguing that no curative instruction could correct the prejudice caused by the prosecutor's reference to "normal" clothing. The court denied both of these requests, finding that "[w]hile it wasn't the exact term the court ordered, I think, given the other testimony the jury heard about it being distinctive clothing, I think that that's within the spirit of what the court intended: that the clothing not be described with any degree of particularity . . . ." Defense counsel did not ask for a curative instruction.

The defendant argues that the prosecutor's single reference to "normal" clothing exposed the jury to "the same kind of value-based prejudice that would have occurred had the witness simply said that he was wearing women's clothes" and that any limiting instruction would have served only to focus the jury's attention on the most prejudicial aspect of the prior uncharged misconduct evidence. The defendant asserts that under these circumstances, the court deprived him of a fair trial when it denied his motion for a mistrial. We disagree.

We begin by setting forth the well settled standard of review. "The decision as to whether to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) *State* v. *Aponte*, 66 Conn. App. 429, 449–50, 784 A.2d 991 (2001), cert. denied, 259 Conn. 907, 789 A.2d 995 (2002).

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial." (Internal quotation marks omitted.) *State* v. *Morales*, 45 Conn. App. 116, 132, 694 A.2d 1356 (1997), appeal dismissed, 246 Conn. 249, 714 A.2d 677 (1998). "[T]he [trial] court, as a result of its familiarity with the context in which the prosecutor's remarks were made, [is] in a favorable position to evaluate the nature of [the allegedly improper] remarks. . . . Therefore, its determination that the prosecutor's remarks did not require a mistrial must be afforded great weight." (Internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 420, 844 A.2d 810 (2004).

We cannot conclude that the prosecutor's isolated use of the term "normal" clothing was of such prejudicial magnitude to require a mistrial. The court clearly sought to limit the information reaching the jury regarding the *details* of the type of clothing worn in the prior occurrence of uncharged misconduct. Then, after hearing defense counsel's objection, the court determined that "normal" was sufficiently nondescript to be consistent with the spirit of the court's order to refrain from describing the clothing with any degree of particularity, noting specifically that during trial the jury had heard

testimony from others referring to the clothing as "distinctive . . . ." As we noted, this determination must be accorded great weight on appeal. We cannot conclude that in the context of the whole trial, the defendant has met his burden of establishing that the prosecutor's substitution of the term "normal" for "distinctive" was sufficiently prejudicial to deprive the defendant of a fair trial. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial.

## IV

The defendant next claims that prosecutorial impropriety during closing argument deprived him of his right to due process. Specifically, the defendant asserts that he was deprived of a fair trial during rebuttal argument when the prosecutor improperly stated that should the jury find the defendant not guilty, "it's going to be open season on small children." In reply, the state concedes that the remark was "improper"; however, the state claims that it was not so prejudicial as to deprive the defendant of a fair trial. We agree with the state.

The record contains the following facts pertinent to our analysis. During closing argument, defense counsel highlighted a perceived discrepancy in the state's evidence, pointing out that the police report of the incident stated that the victim had witnessed the defendant "scratching" himself in the glass doorway, yet the victim testified at trial seventeen months later that she saw the defendant "rubbing himself and pulling himself." In the state's rebuttal argument, the prosecutor stated that if the jury found the defendant not guilty based on the discrepancy between what the victim reported seeing on the day of the incident as reflected in the police report, and what she reported seeing while testifying, "then it's going to be open season on small children." Defense counsel objected to this comment and, after a

discussion at sidebar, the court ordered the jury to disregard the prosecutor's comment, concluding that it was "an appeal to [the jury's] passions . . . ." The court then asked defense counsel if this curative measure was insufficient, to which defense counsel replied, "[n]o, Your Honor."

We begin by setting forth the legal principles and standard of review that guide our analysis. "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . [T]he touchstone of due process analysis in cases of alleged[ly] [harmful] prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's [actions at trial] so infected [it] with unfairness as to make the resulting conviction a denial of due process. . . . In determining whether the defendant was denied a fair trial . . . we must view the prosecutor's [actions] in the context of the entire trial. . . .

"An appellate court's determination of whether any improper conduct by the prosecutor violated the defendant's right to a fair trial is predicated on the factors established in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). Those factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Holloway*, 116 Conn. App. 818, 836, 977 A.2d 750, cert. denied, 294 Conn. 902, 982 A.2d 646 (2009).

As a preliminary matter, we note that the state implicitly concedes that the remark made during rebuttal argument was an act of impropriety.[12] We cannot conclude, however, that this admitted act of impropriety deprived the defendant of the constitutional right to a fair trial under the aforementioned six factors.

First, the state concedes that the act of impropriety was not invited by conduct or argument of the defendant pursuant to the first factor. The misconduct, however, involved a single remark made during a three day trial.[13] "Although even a single instance of improper argument, properly preserved for . . . review, [can be] sufficient to warrant a reversal [of conviction]"; (internal quotation marks omitted) *State* v. *Sinvil*, 270 Conn. 516, 526, 853 A.2d 105 (2004); it is clearly not frequent misconduct. See *State* v. *Felix*, 111 Conn. App. 801, 816, 961 A.2d 458 (2008) ("[o]ne instance of impropriety over the course of an entire trial is not frequent").

We are mindful of the fact that defense counsel objected and sought a curative instruction to the prosecutor's rebuttal remark; however, we cannot conclude that in light of the entire trial the remark was severe.

---

[12] In its brief, the state asserts that "[b]ecause the trial court concluded that the 'open season' remark was improper and instructed the jurors to disregard it as an improper appeal to their emotions, the state shall proceed on the presumption the remark was, in fact, improper." We agree that the prosecutor's remark improperly appealed to the passions of the jury because she suggested that the only way to keep all children safe from child predators was to find the defendant guilty. See, e.g., *State* v. *Thompson*, 266 Conn. 440, 474, 832 A.2d 626 (2003).

[13] The defendant asserts that another act of prosecutorial misconduct occurred when the prosecutor referred to the clothing involved in the prior uncharged misconduct as "normal" clothing during her examination of Rivera. The defendant, however, failed to provide any analysis of this alleged instance of misconduct and we, accordingly, decline to review it as prosecutorial misconduct. *State* v. *Gardner*, 96 Conn. App. 42, 46 n.2, 899 A.2d 655 ("[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief" [internal quotation marks omitted]), cert. denied, 280 Conn. 906, 907 A.2d 92 (2006).

We note that the court found the remark improper in that it appealed to the jury's passions. "The question before us, however, is not whether the prosecutor should be reprimanded, but whether the remark deprived the defendant of a fair trial." *State* v. *Goodson*, 84 Conn. App. 786, 814, 856 A.2d 1012, cert. denied, 271 Conn. 941, 861 A.2d 515 (2004). In *State* v. *Thompson*, 266 Conn. 440, 480, 832 A.2d 626 (2003), our Supreme Court concluded that impropriety was not severe when the prosecutor commented that the defendants had " 'reserved a place in hell for themselves' " and the remark was analyzed in the context of the entire trial in which multiple improper remarks had been made. Likewise, in *State* v. *Felix*, supra, 111 Conn. App. 816, this court determined that prosecutorial impropriety was not severe where the prosecutor stated that the only honor in the case lay with the jury " 'having the guts' " to stand up and find the defendant guilty. Given these precedents, we are not persuaded that the prosecutor's single reference to "open season on small children" is severe.

The prosecutor's remark was an attempt to rehabilitate the credibility of the victim's testimony, which clearly was a critical issue in the case; however, we conclude that the strength of the curative instruction neutralized any prejudicial quality of the isolated remark. Immediately after the prosecutor's rebuttal argument, the court issued a direct order to the jury to disregard the remark. Under these circumstances, the court's prompt instruction directed at an isolated act of impropriety that was not severe had significant curative effect. See *State* v. *Ceballos*, 266 Conn. 364, 413, 832 A.2d 14 (2003). We note that defense counsel also indicated that the curative instruction was sufficient. "[T]he absence of an objection to the court's curative instruction often is an indication of the instruction's adequacy." *State* v. *Rivera*, 61 Conn. App. 763, 779, 765

A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001). "In the absence of an indication to the contrary, we presume that the jury followed the [curative] instructions given to it by the court." Id., 773.

Finally, we conclude that the state's case against the defendant was strong. "The state's evidence does not need to be overwhelming to support a conclusion that prosecutorial impropriety did not deprive the defendant of a fair trial." *State* v. *Felix*, supra, 111 Conn. App. 816. The case largely turned on whether the defendant touched himself with the intent to arouse his sexual desire. Although we recognize that the credibility of the victim was central to this determination, there was significant other evidence with which the jury could have inferred the defendant's intent. Both investigating officers testified that the defendant admitted to them that he was scratching himself. Indeed, the defendant similarly testified that he "could have" been scratching himself and did not dispute that the victim saw him standing in the glass doorway. The victim's mother testified that, on the day of the incident, the victim had told her that she saw the defendant scratching and rubbing himself. Additionally, the state offered evidence of prior uncharged misconduct that allowed the inference that the defendant had masturbated on his deck upon being seen by another individual on a previous occasion.

In sum, we cannot conclude that the prosecutor's improper remark so infected the trial with unfairness that the defendant's resulting conviction amounted to a denial of due process.[14]

[14] The defendant invites us to exercise our supervisory authority over the administration of justice to reverse his conviction and order a new trial due to the prosecutorial impropriety. Although we do not address the issue of whether the prosecutor "ought to have known" her conduct was improper, as the defendant alleges, we do not consider such conduct under these circumstances to be "so offensive to the sound administration of justice that only a new trial can effectively prevent such assaults on the integrity of the tribunal." (Internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 405, 897 A.2d 569 (2006).

The judgment is affirmed.

In this opinion the other judges concurred.