******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* STEVEN C. BELL
(AC 35532)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Argued May 15—officially released September 2, 2014*

(Appeal from Superior Court, judicial district of Middlesex, geographical area number nine, Morgan, J.)

*S. Max Simmons*, assigned counsel, for the appellant (defendant).

*Jacob L. McChesney*, special deputy assistant state's attorney, with whom, on the brief, were *Peter A. McShane*, state's attorney, and *Jeffrey G. Doskos*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Steven C. Bell, appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics in violation of General Statutes § 21a-278 (b) and conspiracy to commit sale of narcotics in violation of General Statutes §§ 53a-48 (a) and 21a-277 (a). The defendant claims that the trial court improperly admitted prior uncharged misconduct evidence and that such error was harmful. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 19, 2010, members of the Bristol and Middletown Police Departments conducted several undercover drug sales in the area of Main Street in Middletown. Detective Robert Motel, in his role as an undercover officer, purchased drugs from the defendant on two separate occasions.

Prior to the undercover drug sales, Motel attended a briefing with other assigned officers, during which he looked at four to six "target" photographs of individuals believed by the police to be selling drugs in the area. Included among those photographs was an image of the defendant.

After the briefing, Motel positioned himself on Main Street. He then encountered two individuals, James Hall and Arthur Moore, who escorted him to the defendant's building. The defendant lived in an apartment at 468 Main Street, one floor above street level. When the trio arrived, they passed through two doors before ascending a single flight of stairs. As Motel neared the top step, the defendant emerged from behind a door to the left and stood on the upstairs landing. The defendant sold Motel crack cocaine and the two spoke briefly. The exchange occurred almost directly outside the defendant's apartment and lasted no longer than two minutes.

Motel left the building and joined other officers at a nearby location. Once there, he detailed the events that had occurred, handed over possession of the drugs, and gave the other officers a description of the defendant. Not long after that, Motel returned to Main Street and approached Moore, who again accompanied him to the defendant's building, at which point the defendant once more sold crack cocaine to Motel on the upstairs landing. The exchange lasted approximately one minute.

A week later, on May 26, 2010, Motel met with Detective Marc DelMauro at the Middletown Police Department. At that time, DelMauro had prepared two separate photographic arrays of eight males, one related to the first sale and the other to the second sale. The defendant was depicted in both. Motel positively identified the defendant in each photographic array as the individual from whom he had purchased drugs on May 19, 2010.

The defendant was arrested and charged in two separate dockets with two counts of sale of narcotics and two counts of conspiracy to commit sale of narcotics. The matters were joined and tried to a jury. The jury returned a verdict of guilty on both counts relating to the second sale, and not guilty on both counts relating to the first sale. The court rendered judgment in accordance with the verdict and sentenced the defendant. This appeal followed.

On appeal, the defendant claims that it was harmful error for the court to allow testimony that the defendant was included in the target photographs of individuals believed to be selling drugs.[1] Before reaching that claim, we address two issues raised by the state: whether the evidentiary claim properly was preserved, and whether the testimony was prior uncharged misconduct evidence. We are not persuaded by the state's arguments. We further conclude that any error in admitting the testimony was harmless.

I

The state argues that at trial the defendant objected to the testimony only on the ground of prejudice, rendering his current claim on appeal unreviewable. The state further contends that the testimony cannot qualify as prior uncharged misconduct evidence because the individuals in the target photographs were characterized as "suspects possibly" selling drugs and not "known" to be selling drugs. Neither argument persuades us.

A

We first consider the issue of preservation. "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush. . . . [T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753–54, 66

A.3d 869 (2013).

On November 28, 2012, the defendant filed a motion in limine for an order precluding any testimony about the target photographs. At a pretrial hearing on the motion, defense counsel voiced the basis for his objection: "I think that testimony will be highly prejudicial because we basically indicate that my client . . . is selling drugs there and they're specifically looking for him, *so they've already . . . found him guilty*, so to speak, and . . . it's just so highly prejudicial as to its probative value." (Emphasis added.) At a later point in the hearing, defense counsel formulated his objection differently, but with the same tenor: "[A]llowing it to be known that he was the target or that he was in the target photographs . . . is highly prejudicial in making that determination of whether on . . . May 19, 2010 . . . he sold . . . Motel the drugs . . . ."

The court denied the motion, which led defense counsel to ask: "[B]ut would the court consider a curative instructi[on] to the jury after they . . . discuss the target photographs indicating . . . just because he's in a target photograph does not mean he's guilty of the crime of May 19 or something to that effect . . . ." The court agreed to the request, and in fact, after Motel testified, it instructed the jury as follows: "You need to understand that, just because there was a target photograph, does not mean that [the defendant] did anything wrong. He had a picture that was included in a series of other photographs that were shown to this detective before he went undercover. It also does not mean, in any way, that [the defendant] committed any of the acts that have been alleged by the state in connection with these particular cases or that he is of bad character or that he has a tendency to commit any criminal acts whatsoever." Later, the court gave a similar instruction in its charge to the jury.

The preceding excerpts confirm that the court had reasonable notice that the defendant had objected to the testimony on the ground that it would lead the jury to prejudge the defendant as a drug dealer. It is true that the defendant did not cite to § 4-5 of the Connecticut Code of Evidence in his objection, nor did he use the words "prior misconduct," "bad acts," or "other crimes." That does not mean, however, that we can disregard the plain response from the court, in both its limiting instruction and charge to the jury, which closely conformed to the language of § 4-5 of the Connecticut Code of Evidence. See also Connecticut Criminal Jury Instructions (4th Ed. 2012) § 2.6-5, available at http://www.jud.ct.gov/JI/criminal/part2/2.6-5.htm (last visited August 21, 2014). It follows then that the court understood the precise character of the defendant's objection. Accordingly, the state's claim regarding preservation fails.

B

We next address whether the testimony regarding the target photographs constituted prior uncharged misconduct evidence.[2] The testimony in dispute occurred at different points in the trial with some variation. Motel first testified that the target photographs were of "potential individuals that [the police] believed were selling narcotics . . . ." The jury then heard Motel describe the photographs as being of "possible targets of people that were selling drugs . . . ." Later, during cross-examination, Motel agreed that the photographs were of "individuals possibly selling drugs," but not of individuals "known to be selling drugs." The state argues that the testimony in dispute was not prior uncharged misconduct evidence because it suggested that the defendant was "suspected" not "known" to be selling drugs. That distinction is not responsive to the threshold issue of whether the testimony concerning the target photographs was misconduct evidence.

Section 4-5 (a) of the Connecticut Code of Evidence provides: "Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person." In the present case, the only inference that the jury reasonably could have drawn from Motel's testimony was that the defendant sold drugs in the area previously, and as a result, had been "targeted" by the police. Accordingly, we conclude that the testimony regarding the target photographs fell within the ambit of § 4-5 of the Connecticut Code of Evidence.

We find support for that conclusion by looking first to the actual language used by Motel to describe the photographs. Although that language varied, it suggested to the jury that the photographs were of individuals who had been selling drugs in the area. Indeed, all variations of the testimony had as a common ingredient the phrase "selling drugs."

We gather additional support for our conclusion by looking to the manner and context in which the disputed testimony was presented. First, police officers throughout the trial characterized the photographs as "target" photographs. The word target has a negative connotation; one detective equated the word with known drug dealers.[3] As used repeatedly during the trial, the word target hinted at the defendant's prior criminal conduct. Second, the jury was told that Motel's objective was to make drug purchases. It then heard that the police selected target photographs for him to examine, in preparation for his task. When presented in such a linear fashion, the only reasonable connection for the jury to make was that the photographs were of drug dealers in the area.

We find further support for our conclusion in case law. In a comparable situation, our Supreme Court has cautioned against the use of police mug shots because,

"such photographs indicate prior arrests, not otherwise admissible, which present an accused person in an unfavorable light before the jury." *State* v. *Pecoraro*, 198 Conn. 203, 205, 502 A.2d 396 (1985); see also *State* v. *Woods*, 171 Conn. 610, 613, 370 A.2d 1080 (1976) (mug shot may have raised implication of prior arrest). That reasoning tends to establish that mug shots have been perceived in our case law as prior misconduct evidence. See *State* v. *Hoover*, 54 Conn. App. 773, 778, 738 A.2d 685 (1999); see also *State* v. *Collins*, 100 Conn. App. 833, 851–52, 919 A.2d 1087, cert. denied, 284 Conn. 916, 931 A.2d 937 (2007). Consistent with that precedent, we are persuaded that the testimony regarding the target photographs in the present case, like the admission of mug shots, indicated prior criminal behavior on the part of the defendant, and, therefore, constituted prior uncharged misconduct evidence within the meaning of § 4-5 of the Connecticut Code of Evidence.

## II

Having determined that the defendant properly preserved his claim and that the testimony constituted prior uncharged misconduct evidence, we now turn to the merits of the defendant's claim. The defendant contends that it was harmful error for the court to admit Motel's testimony about the target photographs. We agree that the testimony improperly was admitted into evidence, but conclude that its admission was harmless.

We iterate briefly the facts and procedural history relevant to this claim. Before trial, the defendant filed a motion in limine to preclude any testimony about the target photographs. At the hearing on the motion, the defendant argued that the testimony would be highly prejudicial because it would create the impression that he had a propensity to engage in the type of conduct for which he was charged. The state, on the other hand, countered that the testimony was highly probative and not unfairly prejudicial. The court denied the motion. Motel, and other witnesses at trial, testified about the target photographs. After Motel's testimony, the court cautioned the jury that the testimony was being introduced solely on the issue of identity, and not to show that the defendant was a person of bad character or that he had a tendency to commit crime. The court repeated a similar instruction in its final charge to the jury, stating: "I permitted the introduction of testimony regarding a so-called target photo viewed by Motel on the issue of the defendant's identity and instructed you that you could use that evidence, to the extent that you find it should be given weight, only as to the issue of the identity of the defendant."

The standard of review is well established. "To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at

least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Lynch*, 123 Conn. App. 479, 484–85, 1 A.3d 1254 (2010).

The following legal principles inform our analysis. "Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime." (Internal quotation marks omitted.) Id., 484. To be admissible under the identity exception, "the factual characteristics shared by the charged and uncharged crimes must be sufficiently distinctive and unique as to be like a signature [so that] it logically could be inferred that if the defendant is guilty of one [crime] he must be guilty of the other. . . . [See] *State* v. *Ibraimov*, 187 Conn. 348, 354, 446 A.2d 382 (1982) (Evidence of other crimes or misconduct of an accused is admissible on the issue of identity where the methods used are sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other. Much more is required than the fact that the offenses fall into the same class. The device used must be so unusual and distinctive as to be like a signature. . . .). Thus, for evidence to be admissible on the issue of identity, there must be sufficient independent evidence relating to the precise method by which the charged crime was committed to allow the jury to determine that that method was identical to the method previously used by the defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Snelgrove*, 288 Conn. 742, 765, 954 A.2d 165 (2008). In the present case, there was no evidence relating to such similarities between the charged and uncharged misconduct.

Even assuming some relevance and materiality to the issue of identity, the probative value of the uncharged misconduct testimony in this case was outweighed by its prejudicial effect. Here, the prejudicial effect was magnified by the similarity between the charged offenses and the misconduct testimony. See, e.g., *State* v. *Vega*, 259 Conn. 374, 398–99, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). Moreover, there was little probative value in light of the fact that Motel had made identifications of

the defendant as the person who sold him drugs. We therefore conclude that the court improperly admitted the testimony about the target photographs. That determination does not, however, end our discussion.

We must address whether the improper admission of the uncharged misconduct testimony was harmful. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the [impropriety] was harmful. . . . [A] nonconstitutional [impropriety] is harmless when an appellate court has a fair assurance that the [impropriety] did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Boyd*, 295 Conn. 707, 743, 992 A.2d 1071 (2010), cert. denied, U.S. , 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011). We conclude that its admission was harmless.

The central and contested issue in this case was whether the defendant or someone else sold Motel drugs. The uncharged misconduct testimony, which implied that the defendant previously had sold drugs in the area, could have furnished the jury with the idea that the defendant was the seller in the present case. Even so, there was additional persuasive evidence that also could have convinced the jury of that fact. See id., 744. The two sales to Motel, for example, occurred on the upstairs landing directly outside of the defendant's apartment. Moreover, Motel identified the defendant, both in-court and out-of-court, as the individual from whom he had purchased drugs. Although the defendant challenged the accuracy of those identifications at trial, the record establishes that Motel had two separate opportunities, and a fair amount of time, to look closely at the seller. He also stood, on both occasions, nearly face-to-face with the seller. See, e.g., *State* v. *Murrell*, 7 Conn. App. 75, 91, 507 A.2d 1033 (1986).

Additionally, the uncharged misconduct testimony was only a small aspect of a larger trial. Id. None of the witnesses discussed the target photographs at length. Nor did the target photographs feature prominently in the state's closing arguments.

Finally, any harm caused by the uncharged misconduct testimony was minimized by the court's limiting instructions. See *State* v. *Howard*, 187 Conn. 681, 688, 447 A.2d 1167 (1982). The court twice instructed the jury that it could not use the testimony to infer that the defendant had a propensity to commit crime or had a bad character. Nevertheless, the defendant argues that the harm was not lessened in this case, because the instructions improperly directed the jury to use the testimony to prove the defendant's identity. That argument ignores the accompanying portion of the court's instructions, which helped to make certain that the defendant was not harmed by the admission of the uncharged misconduct testimony. The jury is presumed to follow the instructions in full. See, e.g., *State* v. *Wil-*

*liams*, 258 Conn. 1, 15 n.14, 778 A.2d 186 (2001).

For these reasons, we have a fair assurance that the prior uncharged misconduct testimony did not substantially affect the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The photographs were not preserved, and therefore never admitted into evidence.

[2] See *State* v. *Boyd*, 295 Conn. 707, 739, 992 A.2d 1071 (2010) (we review interpretation of Connecticut Code of Evidence under plenary standard of review), cert. denied,     U.S.    , 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011).

[3] The following exchange occurred between the prosecutor and Detective Nicholas Puorro:

"[The Prosecutor]: Where did you go once you left the . . .  briefing with Detective Motel?

"[The Witness]: We left the briefing. We headed to our target area, which was the north end of Main Street. We were in a vehicle. We immediately proceeded up there, did a quick surveillance of the area just to see who . . . .

"[The Prosecutor]: Did a quick surveillance of the area. What was the purpose of that?

"[The Witness]: Just to see if any . . . of the known drug dealers, narcotic dealers or *targets* for our investigation were out and about in the area. We were focused on street level dealers and we just went to see if there was anybody in the area that we knew of immediately." (Emphasis added.)