STATE OF CONNECTICUT *v.* LAWRENCE A. FRANKO
(AC 32936)

Gruendel, Bear and Flynn, Js.

Argued November 13, 2012—officially released May 7, 2013

*Jennifer Bourn*, assistant public defender, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Maureen Ornousky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Lawrence A. Franko, appeals from the judgment of conviction, rendered after a jury trial, of one count of kidnapping in the second

degree in violation of General Statutes § 53a-94 (a).[1] On appeal the defendant claims that the trial court abused its discretion in denying his motion in limine to exclude certain evidence of prior uncharged misconduct.[2] He contends that the evidence was not relevant or material, and, even if deemed to have probative value, its prejudicial effect outweighed any such probative value and was harmful. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 10, 2008, the victim was packing groceries into her vehicle, which was parked in the parking lot of a Stamford grocery store. After the victim

---

[1] General Statutes § 53a-94 provides: "(a) A person is guilty of kidnapping in the second degree when he abducts another person. (b) Kidnapping in the second degree is a class B felony for which three years of the sentence imposed may not be suspended or reduced by the court."

"Abduct" is defined in General Statutes § 53a-91 (2) as "to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation."

"Restrain" is defined in General Statutes § 53a-91 (1) as "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein 'without consent' means, but is not limited to, (A) deception . . . ."

Specifically, the defendant was found guilty of violating § 53a-94 (a) as defined by § 53a-91 (2) (B). The jury also found the defendant guilty of being a persistent dangerous felony offender. However, the court granted the defendant's motion for acquittal on that charge.

[2] On appeal the defendant also argues for the first time that the prior misconduct evidence offered was too vague to be used for any of the purposes permitted by § 4-5 (b) of the Connecticut Code of Evidence. He did not request plain error review nor did he claim entitlement to review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Under such circumstances, "[t]his [c]ourt will not consider claimed errors on the part of the trial court unless it appears that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim." *State* v. *Simms,* 170 Conn. 206, 208, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976).

entered her vehicle, shut the door and started the vehicle, the defendant, who had a prior relationship with the victim, opened the vehicle's door and pushed the victim between the passenger's and driver's seats. The victim's keys to the vehicle were knocked out of the ignition during the victim's initial struggle with the defendant, but the defendant then started the vehicle with another key. The victim pushed the horn of her car in an attempt to draw attention to the situation. The defendant grabbed the victim's hair and hit her face against the dashboard, which caused the victim to bleed.

He then held the victim's head down as he drove her vehicle on the Merritt Parkway, in the direction of the defendant's residence. The victim, in an attempt to escape the vehicle, persuaded the defendant to pull into a rest stop for gas. The defendant pulled into the New Canaan rest area, which included a gas station, and parked the vehicle, but, after the defendant decided the rest area was "not the right place to talk," he began to drive the vehicle in reverse in order to exit the rest area. Trying to prevent the victim from exiting the vehicle, the defendant grabbed the victim's belt and pants, until her pants ripped at the crotch area. The victim successfully escaped the vehicle and ran to the gas station. The victim called 911 on her cell phone and also requested that the gas station attendant call 911, as well. The defendant ran into the woods, behind the rest area, before state police arrived in response to the 911 calls.

Officer Glen Coppola of the Stamford police department (department) was dispatched to the rest area to meet with the victim. The victim subsequently followed Coppola to the special victims unit of the department. When the victim arrived at the department, she met with Sergeant Christian DiCarlo, who noted facial bruising, scratches around the victim's eyes and the fact that her jeans were torn. DiCarlo took the victim's statement

and photographed the extent of her injuries. Later that night, the defendant surrendered to the department and was arrested on the charge of kidnapping in the second degree, of which he ultimately was convicted. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the court abused its discretion in admitting prior uncharged misconduct evidence. Specifically, the defendant claims that (1) the admission of the uncharged misconduct evidence was not relevant or material to any exception under the Connecticut Code of Evidence; (2) the prejudicial effect of the admitted uncharged misconduct evidence outweighed the probative value; and (3) the admission of the uncharged misconduct evidence was harmful.

I

The defendant first argues that the admission of the uncharged misconduct evidence was not relevant or material to any exception under the Connecticut Code of Evidence. Additional facts are relevant to the defendant's claim. On June 15, 2010, the state filed a notice of evidence of uncharged misconduct. Both the state and the defendant submitted memoranda regarding the misconduct evidence, which the trial court decided to treat as a motion in limine.[3]

After the state's first witness was heard, the victim took the stand for a proffer of the evidence of uncharged misconduct to the court, in the absence of the jury. The state sought to admit evidence of uncharged misconduct under § 4-5 of the Connecticut Code of Evidence, that the defendant had subjected the victim to verbal

---

[3] It should be noted that although the court references both of these memoranda and each party has submitted a copy of their respective memoranda in the appendices to their respective briefs, the court file is devoid of these documents.

and physical abuse starting three months into their relationship.[4] Specifically, the state sought to admit evidence that the defendant made "verbal threats to blow [the victim] up while she was in her van. And to have someone fix her." Furthermore, the state wanted to offer three specific instances of the defendant allegedly damaging property connected to the victim. Namely that "the [d]efendant, in [the victim's] presence, smashed her cell phone, broke her sunglasses [and] slashed her tires," as well as a separate vandalism incident where the defendant scratched or "keyed" the paint surface of the car of the victim's son. The state also represented that it would offer evidence as to two specific incidents of sexual assault of the victim, in addition to an incident where "the [d]efendant improperly and illegally obtained some registration information regarding a car that [the victim] was driving." The state argued that the evidence of uncharged misconduct was admissible under § 4-5 (b) of the Connecticut Code of Evidence to prove intent, motive, malice, to corroborate crucial prosecution testimony and to complete the story.

The defendant objected to the admission of the prior uncharged misconduct evidence by contending that the evidence was irrelevant to show intent, motive, malice and corroboration. The defendant further argued that many of the incidents were too remote in time, and he also questioned the credibility of the victim's testimony. He contended that none of the prior misconduct evidence ever was reported to the police or any third party; no domestic violence report was filed with any proper

---

[4] Section 4-5 (b) of the Connecticut Code of Evidence provides: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than [to prove the bad character or criminal tendencies of that person], such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

venue; the victim continued to see the defendant after any such alleged incidents. The defendant further maintained that there was no pattern or common scheme of the crime of kidnapping, or other signature of that crime, and the prejudice of any such introduction outweighed any probative value. He contended that the evidence was not probative of the kidnapping charge, but rather would inflame the jury and create a bias against the defendant. The defendant maintained that the evidence was highly prejudicial when weighed against its probative value.

The court admitted all evidence of uncharged misconduct offered by the state except the evidence regarding the keying of the car of the victim's son. At trial, the victim testified about substantially the same evidence as she did in the state's proffer. In light of its ruling, the court provided the following limiting instruction to the jury after the victim's testimony containing the uncharged misconduct: "[M]embers of the jury, before the [s]tate calls its next witness, I'm going to give you a limiting instruction. And I'm going to substantially repeat this instruction at the end of the case when I give you the final instructions.

"But, for now, I want you to listen carefully to what I'm about to say. The [s]tate has offered evidence of other acts of misconduct of the [d]efendant which it claims occurred prior to the alleged kidnapping on November 10, 2008.

"The evidence that I am referring to, is the testimony from [the victim], that the [d]efendant damaged her personal property. Her testimony that the [d]efendant threatened her. And her testimony that the [d]efendant sexually assaulted her. None of that evidence is being admitted to prove the bad character of the defendant. Or, that the [d]efendant [had] a tendency to commit criminal acts.

"Such evidence is being admitted solely to show or establish the following. One, that the [d]efendant intended to restrict the [victim's] movement at the time of the alleged crime.

"Two, that the [d]efendant abducted the [victim] at the time of the alleged crime, [i.e.] that he restrained the [victim] with the intent to prevent her liberation by using or threatening to use physical force or intimidation.

"Three, the [d]efendant's motive in committing the alleged kidnapping. And four, corroboration of crucial prosecution testimony regarding the claimed abduction at the time of the alleged kidnapping. And five, the complete story as presented by the prosecution.

"You may not consider such evidence as establishing a predisposition on the part of the [d]efendant to commit the crime charged, i.e., kidnapping, or, to demonstrate a criminal propensity.

"You may consider such evidence, if you believe it. And further find that it logically, rationally, and conclusively supports the issues for which it is being offered by the [s]tate; but, only as it may bear on the following issues.

"The [d]efendant's intent to restrict the [victim's] movement on the date of the alleged kidnapping. The element of kidnapping that requires proof of abduction. The [d]efendant's motive in committing the alleged kidnapping. Corroboration of the [s]tate's evidence regarding abduction. And to complete the story as presented by the prosecution.

"On the other hand, if you do not believe such evidence, or even if you do, if you find that it does not logically, rationally, and conclusively support the issues for which it is being offered by the [s]tate, then you may not consider that testimony for any purpose.

"You may not consider evidence of other misconduct of the [d]efendant for any purpose other than the ones I've just told you. Because it may predispose your mind uncritically to believe that the [d]efendant may be guilty of the offense here charged merely because of the alleged other misconduct.

"For this reason, you may consider this evidence only on the issues for which it is being offered and for no other purpose." The court gave substantially the same instruction in its final charge to the jury.

We review the admission of the disputed evidence based on an abuse of discretion standard guided by the following principles. "The standard of review is clear. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Johnson*, 65 Conn. App. 470, 475–76, 783 A.2d 1057, cert. denied, 258 Conn. 930, 783 A.2d 1031 (2001).

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . .[5] On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. The rules of policy have no application whatever to evidence of any crime which directly tends to prove that the accused

---

[5] Our Supreme Court has since ruled in *State* v. *DeJesus*, 288 Conn. 418, 462–63, 953 A.2d 45 (2008), that in sexual assault cases, such evidence can be used to suggest that the defendant has a propensity for criminal sexual behavior.

is guilty of the specific offense for which he is on trial. . . . [Our Supreme Court has] developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions [set forth in § 4-5 (b) of the Connecticut Code of Evidence]. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 340, 933 A.2d 1158 (2007). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 667, 969 A.2d 750 (2009).

"When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *State* v. *Outlaw*, 108 Conn. App. 772, 785, 949 A.2d 544, cert. denied, 289 Conn. 915, 957 A.2d 880 (2008). In *State* v. *Sawyer*, 279 Conn. 331, 357, 904 A.2d 101 (2006), our Supreme Court addressed harmless error review and determined that the proper standard is "whether the jury's verdict was substantially swayed by the error." Our Supreme Court further held that "a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) Id.

We begin our analysis by noting first that kidnapping in the second degree under § 53a-94 (a) is a specific intent crime. To prove that the defendant was guilty of

the crime of kidnapping in the second degree, the state was required to establish, beyond a reasonable doubt, that the defendant "abduct[ed] another person." General Statutes § 53a-94 (a). In the present case, therefore, the state had the burden to prove, beyond a reasonable doubt, the defendant's intent to "abduct" the victim. "Abduct," as used in § 53a-94 (a), is defined as "to restrain a person with intent to prevent his liberation by . . . using or threatening to use physical force or intimidation." General Statutes § 53a-91 (2) (B). The state, therefore, needed to show, beyond a reasonable doubt, that the defendant restrained the victim with the intent to prevent the victim's liberation by use or threat of physical force or intimidation.

The testimony of the victim was relevant to the defendant's intent to abduct the victim, and thereby restrain the victim's movement on the date of the kidnapping. "Although there is no element in the kidnapping statutes that explicitly requires proof of the victim's state of mind, [our Supreme Court] has stated that evidence that is 'probative of the victim's state of mind may be admissible . . . when that state of mind is independently relevant to other material issues in the case.' . . . Thus, when a defendant . . . is charged with [second] degree kidnapping and the jury is instructed on the meaning of 'abduct,' which requires a finding that the defendant restrained the victim 'with intent to prevent his liberation by . . . using or threatening to use physical force or intimidation' . . . the trial court may allow the jury to consider evidence that the victim reasonably believed that force would be used if he or she tried to escape as proof that the defendant intended to prevent the victim's liberation by threats or intimidation." (Citations omitted.) *State* v. *Pascual*, 305 Conn. 82, 96 n.7, 43 A.3d 648 (2012). "Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, where available, is often relied upon." (Internal quotation marks omitted.) *State*

v. *Irizarry*, 95 Conn. App. 224, 234, 896 A.2d 828, cert.
denied, 279 Conn. 902, 901 A.2d 1224 (2006).

The defendant's violent and threatening behavior
toward the victim in the past was relevant to show the
defendant's intent to prevent the victim's liberation by
use or threat to use physical force or intimidation on
November 10, 2008, when the defendant forced the vic-
tim out of the driver's seat of her vehicle and proceeded
to drive her in her vehicle on the Merritt Parkway
toward the defendant's residence, while holding the
victim's head down and then ripped the victim's pants
when she attempted to exit the vehicle. The victim
testified that the defendant previously threatened her,[6]
damaged her property both in[7] and out[8] of her presence
and sexually assaulted her on two occasions.[9] The

---

[6] The victim testified in relevant part: "The threats, he would say that he knows somebody, that he's gonna blow my van—blow up my van with me in it. He would say that he would have his friends, or he would have somebody fix me. And the more I say that, the more I get scared."

[7] At trial the victim testified: "[O]ne time we went to the Port Chester to watch a movie. As a visiting nurse, I work very hard, and I fell asleep in the car. He was angry that I fell asleep in the car because he was accusing me that I was seeing somebody.

"So, he grabbed my cell phone. He wants to look at the numbers and then he step on it. And broke my sunglasses and he took off and he left me there in the parking lot."

[8] The victim testified in relevant part: "And one time I was headed to my car and I saw my van. The two car—the two tires on the driver's side, the front and the back, were slashed.
＊ ＊ ＊
"[The defendant] admitted that my—you know, he had something to do with slashing of my tire. And he told me to go to Town Fair in High Ridge. That he will pay for—he paid for my tire, all I have to do is just go there."

[9] The victim testified to two instances of sexual assault by the defendant. The first instance happened as the defendant was driving himself and the victim back from dinner. The victim testified: "[The defendant] pulled into that driveway and I beg him not to go there, but he did.
＊ ＊ ＊
"He told me not to say anything or otherwise something is going to happen to me. So, I was on the passenger side and he was driving.

"So, he grabbed me from the passenger side, towards the back. And—and he take advantage on me [in a sexual nature]."

The second sexual assault, to which the victim testified, happened when the victim went to the defendant's house, in her capacity as a nurse, at his

defendant's prior use of physical force and intimidation toward the victim, her cell phone, her sunglasses and tires was relevant to prove that the defendant intended to prevent the victim's liberation by threats or intimidation by showing that the victim reasonably believed that the defendant would use force against her on the date of the kidnapping based on the defendant's prior use of force against her and her property. See *State* v. *Pascual*, supra, 305 Conn. 96 n.7.

"When instances of a criminal defendant's prior misconduct involve the same victim as the crimes for which the defendant presently is being tried, those acts are especially illuminative of the defendant's motivation and attitude toward that victim, and, thus, of his intent as to the incident in question." *State* v. *Irizarry*, supra, 95 Conn. App. 235. The defendant previously had used physical force and intimidation toward the victim and

request because he was complaining of stomach discomfort. The victim testified: "So, that afternoon, I went to his house and all he wants is my cell phone. And I told him that my cell phone, it's in my van. He wants my cell phone. He wants to see the numbers. I said, it's in the van. So, he wants to get it himself.

"And while he's getting my cell phone, he was going to handcuff me to his bed so I won't go anywhere while he goes down to—to get my cell phone. And I beg him not to. I—I told him that at this time—I told him that I will just put my hand—my hand—because his bed—behind his bed was a glass window which you can look down where I park.

"I told him that I'll just put my hands on the glass so he could see both of my hands. I begged, so he wouldn't handcuff me. And I told him I won't move.

"[The Prosecutor]: Okay, so—am I getting from that that he didn't want you to leave his room?

"[The Victim]: Yes.

"[The Prosecutor]: Okay, and what happened after that?

"[The Victim]: He came and got my cell phone and he wants to check the numbers. Then he—I—he asked for my password because he will not allow me to do it myself. So, I gave him my password.

\* \* \*

"[The Victim]: He continued to sexually take advantage of me. And I looked down, I—I saw the paper towel holder and it looked like marble. And he was going to use that in me. I begged because I—I feel the pain [from her recent hysterectomy]."

her property, including her cell phone, sunglasses and tires. This evidence of the defendant's past behavior is illuminative of the defendant's intent on the date of the kidnapping, namely, that he did not intend merely to talk to her, but, rather, intended to prevent her liberation by use or threat to use physical force and intimidation. See id., 230, 237 (holding that defendant's prior misconduct consisting of previous attack on victim with machete, his previous encounter at victim's apartment, where defendant was preparing to hit victim but stopped because victim's grandson was present, and two incidents where defendant, possessing knives, banged on victim's door were "relevant to show [defendant's] intent to cause [victim] intense fear or apprehension on [date of charged conduct]" in satisfaction of first prong under § 4-5 [b] of Connecticut Code of Evidence).

We conclude that the trial court reasonably could have determined that the victim's testimony was relevant to the issue of the defendant's intent in satisfaction of the first part of the admissibility test under § 4-5 (b) of the Connecticut Code of Evidence. We note that the court also admitted this evidence to corroborate crucial prosecution testimony, to complete the story, to prove malice, to prove motive, as well as to prove intent. Even if we assume, without deciding, that the court was in error in admitting the prior misconduct evidence for these remaining four grounds, it is still the defendant's obligation to show that he was harmed by the admission. As we explain more fully in part III of this opinion, the defendant has failed to show this.

II

The defendant further argues that the court abused its discretion in admitting the prior misconduct evidence because the prejudicial impact of the evidence outweighed its minimal probative value.

"The trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . We note that [b]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Lynch*, 123 Conn. App. 479, 492, 1 A.3d 1254 (2010). "Evidence is prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *State* v. *Orr*, supra, 291 Conn. 667–68.

"[W]hen the trial court has heard a lengthy offer of proof and arguments of counsel before performing the required balancing test, has specifically found that the evidence was highly probative and material, and that its probative value significantly outweighed the prejudicial effect, and has instructed the jury on the limited use of the evidence in order to safeguard against misuse and to minimize the prejudicial impact . . . we have found no abuse of discretion." (Internal quotation marks omitted.) *State* v. *Lynch*, supra, 123 Conn. App. 492–93. "Proper limiting instructions often mitigate the prejudicial impact of evidence of prior misconduct. . . . Furthermore, a jury is presumed to have followed a court's limiting instructions, which serves to lessen any prejudice resulting from the admission of such evidence." (Internal quotation marks omitted.) *State* v.

*Pereira,* 113 Conn. App. 705, 715, 967 A.2d 121, cert. denied, 292 Conn. 909, 973 A.2d 106 (2009).

In the present case, the court heard significant proffered testimony from the victim and heard from counsel for both parties with respect to the relevance/prejudice balance. The court thoroughly analyzed the probative value of the defendant's prior uncharged misconduct, namely, its relevance to the issues of the defendant's intent, motive, malice, corroboration of crucial prosecution testimony and to complete the story. The court found the evidence relevant. Having analyzed the probative value of the evidence, the court then examined its prejudicial effect. The court specifically found: "[P]rejudice means it was all so emotionally overwhelming that the jury just can't think straight and they're going to just be so inflamed by this. And I heard the [victim] testify about the two sexual assaults and I didn't hear anything all that graphic there. . . . But I didn't hear anything all that terrible, to be honest with you.

\* \* \*

"In each instance of which she testified about sexual assault, she described the incident in general terms. It wasn't particularly graphic as far as I'm concerned, or inflammatory. . . . [T]here is direct evidence that the [d]efendant was involved . . . . And she said that that act—those actions were motivated by the [d]efendant's jealousy." See *State* v. *Irizarry,* supra, 95 Conn. App. 238 (court did not abuse discretion in concluding probative value outweighs prejudicial effect when misconduct evidence no more shocking than evidence of crimes with which defendant charged).

Then, finding a potential for undue prejudice, the court limited any reference to the "keying" of the car of the victim's son in the interest of "protecting the [d]efendant's rights and interests" because the incident was circumstantial and the defendant was not charged

with criminal mischief. Finally, during the jury charge, the court issued a clear limiting instruction to further minimize any unfair prejudice. "Absent evidence to the contrary, we presume that the jury followed the court's limiting instruction." *State* v. *Messam*, 108 Conn. App. 744, 758, 949 A.2d 1246 (2008). "We previously have held that evidence of dissimilar acts is less likely to be prejudicial than evidence of similar or identical acts." (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 398, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002). None of the admitted prior misconduct evidence is similar or identical to the charged misconduct of second degree kidnapping.

There is case law in this state that speaks to the highly prejudicial nature of prior sexual misconduct evidence. See *State* v. *Ellis*, 270 Conn. 337, 367–68, 852 A.2d. 676 (2004) (holding court's instructions to jury could not cure prejudice from testimony regarding prior uncharged sexual misconduct by defendant). "We have recognized that the crime of sexual assault [is] violent in nature, irrespective of whether it is accompanied by physical violence. Short of homicide, [sexual assault] is the ultimate violation of self. It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. [Although sexual assault] is very often accompanied by physical injury to the [victim] . . . [it] can also inflict mental and psychological damage. . . . Not all crimes of sexual assault, however, are equally brutal and shocking. . . . For example, although [s]exual assaults in the first degree can be characterized as brutal . . . [s]ome . . . evince a greater degree of brutality or shocking behavior than others. The question then becomes whether one of the sexual assault crimes . . . is so brutal and shocking when compared with the other, that a jury, even with

proper instructions, could not treat them separately." (Citations omitted; internal quotation marks omitted.) Id., 377. The presence, however, of the factors, as previously discussed, can and, in the present case, do overcome such prejudicial nature. See *State* v. *Romero*, 269 Conn. 481, 502–503, 849 A.2d 760 (2004) (holding prejudicial value of witness testimony regarding prior sexual misconduct by defendant in order to establish defendant's sexual abuse of young family members outweighed by probative value in light of its relevance and materiality). Therefore, we conclude that under these circumstances the court did not abuse its discretion in finding that the probative value of the evidence outweighed its prejudicial impact.

## III

The defendant finally argues that the alleged error by the court in admitting the prior misconduct evidence was harmful.[10] Even if we were to conclude that the court abused its discretion and improperly admitted the evidence, we would conclude, nevertheless, that it was harmless error. "[W]hether [the improper admission of a witness' testimony] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material

---

[10] The first prong of the admissibility test for prior misconduct evidence, as delineated in *State* v. *Randolph*, supra, 284 Conn. 340, can be interpreted to stand for the proposition that if evidence is relevant and material to one of the grounds set forth in § 4-5 (b) of the Connecticut Code of Evidence, the prong is then satisfied as to that evidence. But see *State* v. *Kalil*, 136 Conn. App. 454, 465–69, 46 A.3d 272 (2012) (trial court admitted evidence to show defendant's intent and to complete story, this court affirmed, holding evidence admissible to show defendant's intent, but did not analyze for completing story, defendant sought certification from our Supreme Court, but did not seek certification as to admission of evidence for completing story, our Supreme Court granted certification as to both intent and completing story), cert. granted, 307 Conn. 955, 59 A.3d 1191 (2013).

points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Sawyer*, supra, 279 Conn. 358.

"The harmless error doctrine is rooted in the fundamental purpose of the criminal justice system, namely, to convict the guilty and acquit the innocent. . . . [W]e must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]." (Citations omitted; internal quotation marks omitted.) *State* v. *Mitchell*, 296 Conn. 449, 459–60, 996 A.2d 251 (2010). The defendant claims that admission of the uncharged misconduct evidence was not only improper, but harmful. The most relevant factors to be considered are the strength of the state's case and the impact of the allegedly improperly admitted evidence on the trier of fact. See *State* v. *Sawyer*, supra, 279 Conn. 358.

We conclude that the defendant has failed to show that the admission was harmful because of the overall strength of the state's case and the impact of the evidence on the jury. There is no question that the victim and the defendant previously had a romantic relationship. Based on, not only the victim's testimony, but also the testimony of various law enforcement officials, the jury reasonably could have found that the defendant prevented the victim from acting on her clear desire to leave him. Their encounter began with the defendant forcing the victim out of the driver's seat and deeper into the vehicle. The defendant then applied direct physical

force on the victim in the form of grabbing her hair and hitting her face against the vehicle's dashboard, causing her to bleed. He then continued to hold the victim's head down as he drove her and her vehicle on the parkway away from Stamford.

In an attempt to escape, the victim convinced the defendant to pull off of the parkway into the rest area where she then proceeded to exit the vehicle. Again the defendant applied direct physical force by grabbing the victim's pants until they ripped at the crotch area, after which the victim successfully escaped. These facts, which the jury could have reasonably found, demonstrate that the defendant used direct physical force intended to intimidate the victim and prevent her from leaving, starting in the Stamford parking lot and continuing until her flight from her vehicle at the New Canaan rest area.

Numerous law enforcement officers corroborated the fact that the victim was both visibly upset and injured. State Trooper Humberto Henriques testified that when he observed the victim at the rest area she had facial bruising and scratches consistent with being struck. Coppola testified that when he arrived at the rest area the victim was very upset and shaking. DiCarlo testified that when he met her at the police department after the incident, he observed the victim visibly upset and crying, with facial bruising and scratches, as well as torn jeans. The defendant's sunglasses were also found in the victim's vehicle and at trial the defendant stipulated that those found belonged to him.

The state's case was very strong, even without the prior misconduct evidence. We therefore conclude that the defendant has failed to satisfy his burden of showing that any impropriety was harmful because it cannot be said, with fair assurance, that the alleged error substantially affected the verdict.

Under the given circumstances, with due regard for the broad leeway possessed by the trial courts in determining the admissibility of evidence, we conclude that the trial court did not abuse its broad discretion in admitting the evidence of the defendant's prior misconduct. Accordingly, we conclude that the trial court acted properly.

The judgment is affirmed.

In this opinion the other judges concurred.