******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JUAN
CARLOS GONZALEZ
(AC 36656)

Alvord, Prescott and Mihalakos, Js.

*Argued May 24—officially released August 2, 2016*

(Appeal from Superior Court, judicial district of
Tolland, geographical area number nineteen, Graham,
J.)

*Elizabeth Knight Adams*, assigned counsel, for the
appellant (defendant).

*Nancy L. Walker*, deputy assistant state's attorney,
with whom, on the brief, were *Matthew C. Gedansky*,
state's attorney, and *Elizabeth C. Leaming*, senior assis-
tant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Juan Carlos Gonzalez, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in a cohabiting relationship in violation of General Statutes § 53a-70b, one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), and two counts of criminal violation of a protective order in violation of General Statutes § 53a-223. On appeal, the defendant claims that the court abused its discretion by (1) denying his motion for a mistrial, (2) ordering him to wear shackles throughout the trial except when testifying, and (3) admitting evidence of his prior uncharged misconduct. We disagree and, accordingly, affirm the judgment of conviction.

The jury reasonably could have found the following facts. The defendant and the victim[1] immigrated to the United States in 1999, settling in Connecticut. They had three children together, the oldest of whom was twelve years old at the time of trial. The defendant became more controlling as the relationship progressed, and eventually became sexually and physically abusive. In the evening of December 12, 2012, the victim went to the Vernon Police Department to file a complaint against the defendant for physically abusing her. She also spoke briefly about past sexual abuse. The defendant then was arrested and charged with second degree assault and breach of the peace. Following his arrest, a protective order was issued on December 13, 2012, ordering the defendant not to harass or assault the victim, to stay away from her home, and not to contact her. The substitute information subsequently omitted the breach of the peace count but included four counts of sexual assault in a cohabiting relationship and violation of a protective order. The two counts of violation of a protective order counts were added after the defendant sent a letter to the victim, and asked several individuals to contact the victim on his behalf in violation of the protective order.

The jury found the defendant guilty of two counts of sexual assault in a cohabiting relationship in violation of § 53a-70b, one count of assault in the second degree in violation of § 53a-60 (a) (2), and two counts of criminal violation of a protective order in violation of § 53a-223. It also acquitted the defendant of two additional counts of sexual assault in a cohabiting relationship in violation of § 53a-70b. This appeal followed.

I

The defendant contends that the court abused its discretion by denying his motion for a mistrial after it first admitted testimony by a police officer that the defendant, after giving an oral statement to the police, had refused to sign a sworn, written statement while in police custody, then reversed itself two days later and

ruled that it would strike the testimony. The defendant moved for a mistrial, but the court denied the motion and instead struck the testimony and instructed the jury to disregard the stricken testimony. The defendant claims this was an abuse of discretion; we disagree.[2]

The record reveals the following additional relevant facts. A police officer testified regarding his questioning of the defendant. The defendant told the police that he had gone through his normal morning routine, had a minor argument with their daughter regarding her clothing, and had not seen any injuries on the victim. When told that the victim had made a complaint, he responded that she was crazy. The state then asked, "[w]as he willing to give a statement that was sworn and in writing?" The police officer responded that "[h]e did not give me a sworn written statement."

We first set forth our standard of review and the relevant law. "In our review of the denial of a motion for mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 435, 773 A.2d 287 (2001). "If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *State* v. *Luther*, 114 Conn. App. 799, 805, 971 A.2d 781, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009). "[A]s a general matter, the jury is presumed to follow the court's curative instructions in the absence of some indication to the contrary." *State* v. *Grenier*, 257 Conn. 797, 810, 778 A.2d 159 (2001). Where an "evidentiary impropriety is not constitutional in nature, the defendant bears the burden of demonstrating harm." Id., 806–807. "[T]he burden is on the defendant to establish that, in the context of the proceedings as a whole, the stricken testimony was so prejudicial, notwithstanding the court's curative instructions, that the jury reasonably cannot be presumed to have disregarded it." *State* v. *McIntyre*, 250 Conn. 526, 534, 737 A.2d 392 (1999).

The defendant argues that *State* v. *Grenier*, supra, 257 Conn. 797, is applicable to the present case. In *Grenier*, two experts testified regarding the victim's credibility, on which the case rested, and the court overruled the defendant's objection to the testimony. Id., 802, 804, 807. Following closing arguments, the court, in its general instructions, stated that the jury should not rely on any witnesses' opinions on the victim's credibility. Id., 805, 810. Our Supreme Court found reversible error. Id., 812. It concluded that the improperly admitted testimony had an indelible impact on all of the subsequent testimony and argument, that the opinions of two experts on the central issue in the case

were highly prejudicial, and that the instruction was ambiguous. Id., 808–11.

In the present case, in contrast, the court reversed itself before the defendant took the stand, after the victim had taken the stand, and before any closing arguments; it therefore had the potential to influence much less of the evidence than in *Grenier*. In addition, the police officer's statement did not have nearly the potential prejudicial impact of an expert opinion regarding credibility. Furthermore, the court expressly reversed itself and specifically stated what testimony was stricken. The court, therefore, properly exercised its discretion by denying the defendant's motion for a mistrial.

## II

The defendant next claims that the court abused its discretion by ordering that he wear leg shackles throughout the trial except when testifying. He asserts that the court's decision was improper because the reason for shackling the defendant was not the defendant's behavior, but, rather, a shortage of marshals. He further contends that, although the court took appropriate steps to hide the leg shackles from the jury, he should not be required to prove that the jury was aware of the leg shackles.

Our Supreme Court set out the standard of review and pertinent law for a shackling claim in *State* v. *Tweedy*, 219 Conn. 489, 506, 594 A.2d 906 (1991): "In reviewing a shackling claim, our task is to determine whether the court's decision to employ restraints constituted a clear abuse of discretion. . . . A record in some fashion disclosing the justification for using restraints . . . is essential to meaningful appellate review of a shackling claim." (Citations omitted.) "In order for a criminal defendant to enjoy the maximum benefit of the presumption of innocence, our courts should make every reasonable effort to present the defendant before the jury in a manner that does not suggest, expressly or impliedly, that he or she is a dangerous character whose guilt is a foregone conclusion. . . . The negative connotations of restraints, nevertheless, are without significance unless the fact of the restraints comes to the attention of the jury. [Where] the . . . record is devoid of competent evidence that the jury was aware of the defendant's shackles at any time during his trial, it is clear beyond a reasonable doubt that the presumption of innocence was not abridged by the court's decision to shackle him." (Citations omitted.) Id., 508; see also *State* v. *Brawley*, 321 Conn. 583, 588,    A.3d    (2016). "The defendant bears the burden of showing that he has suffered prejudice by establishing a factual record demonstrating that the members of the jury knew of the restraints." (Internal quotation marks omitted.) *State* v. *Brawley*, supra, 588.

The defendant's claim in the present case fails both prongs of the *Tweedy* analysis. The court set out its reasons for ordering the defendant to wear shackles on the record: the shortage of marshals, the proximity of multiple exits from the courtroom into a busy public area, the defendant's high bond, his motivation to flee to avoid deportation, and the defendant's prior behavior at a family court hearing. We see nothing in *Tweedy* or its progeny to suggest that these reasons are insufficient. See *State* v. *Taylor*, 63 Conn. App. 386, 390, 396, 776 A.2d 1154 (multiple doorways leading to crowded public space relevant to shackling), cert. denied, 257 Conn. 907, 777 A.2d 687, cert. denied, 534 U.S. 978, 122 S. Ct. 406, 151 L. Ed. 2d 308 (2001). In addition, the record is replete with evidence that the court took steps to hide the leg shackles from the jury by asking the clerk to view the defendant from the jury box and see if the shackles were visible, by ensuring that the shackles were muffled, by permitting the defendant to be unrestrained when testifying, and by instructing the defendant's attorney to alert the court if he thought the jury detected the shackles. The defendant has not pointed to any competent evidence in the record suggesting that the jury was aware of the shackles, and, under Connecticut law, the defendant bears the burden of demonstrating that the jury was aware of the shackles.[3] The court's decision to keep the defendant shackled and the measures it took to hide the shackles from the jury therefore did not constitute an abuse of discretion.

### III

The defendant's final claim is that the court abused its discretion by admitting evidence of the defendant's prior uncharged misconduct directed against the victim. The defendant asserts that the prejudicial effect of this evidence, which consisted of incidents of prior physical abuse and prior sexual abuse, as propensity evidence outweighed any probative value as evidence of intent, motive, and a system of criminal activity, for which it was admitted. The state responds that the evidence was properly admitted, and that the defendant failed to assert, and the record does not demonstrate, that the admission of the evidence was harmful.

We begin with the standard of review and the governing legal principles. In order to be admissible, evidence of prior uncharged misconduct of a nonsexual nature must be relevant and material for a nonpropensity purpose, such as to prove intent, motive, or a system of criminal activity. *State* v. *Kalil*, 314 Conn. 529, 539–40, 107 A.3d 343 (2014). Its probative value must also outweigh any prejudicial effect. Id., 540. Evidence of prior sexual misconduct, on the other hand, may be admitted to prove propensity in a sex crime case pursuant to our Supreme Court's holding in *State* v. *DeJesus*, 288 Conn. 418, 476, 953 A.2d 45 (2008), if "(1) the trial court finds that such evidence is relevant to the charged crime in

that it is not too remote in time, is similar to the offense charged and is committed upon persons similar to the prosecuting witness; and (2) the trial court concludes that the probative value of such evidence outweighs its prejudicial effect." The trial court must still determine that the probative value outweighs any prejudicial effect, and provide an appropriate limiting instruction. See id., 476–77.

Where evidence has been improperly admitted, and the impropriety is not constitutional in nature, the defendant bears the burden on appeal of proving that its admission was harmful. *State* v. *Eleck*, 314 Conn. 123, 129, 100 A.3d 817 (2014); *In re James O.*, 160 Conn. App. 506, 527, 127 A.3d 375, cert. granted on other grounds, 319 Conn. 956, 125 A.3d 533 (2015). We review the court's findings regarding relevance and the weighing of probative value versus prejudicial effect for abuse of discretion. *State* v. *Kalil*, supra, 314 Conn. 540–41.

The following additional facts are relevant to our decision. In the present case, the charged nonsexual assault was that, in December of 2012 the defendant had pushed the victim against a wall, punched her in the face, then proceeded to beat her on the back, arm, and neck with a belt, leaving marks. There were four charged sexual assaults essentially arising out of two incidents of conduct. The most recent sexual assaults occurred after a party, also in December of 2012, at which the victim had not behaved the way the defendant wished, failing to show enthusiasm regarding the defendant's purchase of a dilapidated house in need of significant repair. After everyone had left, the defendant forcibly removed the victim's clothes, pinned her down with a bat on her neck, and forcibly raped her vaginally and anally while she told him to stop. The earlier charged sexual assaults, in November 2012, of which the jury acquitted the defendant, were allegedly similar. According to the victim's testimony, while the children slept the defendant took the victim to the basement, threw her on a weight bench, placed a weighted bar on her neck, forcibly removed her clothing, and raped her vaginally and anally. As she protested, the defendant yelled at her to shut up, and when he had finished he laughed cynically and left her there.

The state offered the following uncharged misconduct evidence to the jury. The prior physical abuse evidence consisted of the victim's testimony that the defendant had previously left marks on her body multiple times, and would tell her to wear clothing that would hide the marks, or would forbid her from leaving the house if the marks were too big for her to hide. She also testified that he had beaten her when she was pregnant, but had been careful to avoid her belly, and had regularly thrown her to the floor or against the wall. In June of 2005, the defendant had punched her

in the back of the head, then threatened her with a knife, after which she made a 911 call. She testified that she did not call the police again after the June, 2005 incident out of fear, and that the abuse was ongoing from then until December of 2012.

The prior sexual abuse evidence consisted of the victim's testimony that in 2006 the defendant locked their daughter in her room, then placed a sock in the victim's mouth and anally and vaginally raped her while pinning her down on their bed. She did not go to a doctor, despite anal bleeding, or tell anyone out of fear. She testified that several other rapes occurred and that, at one point, a nurse noticed bruising caused by the rapes and asked her about it. At that point, she told the nurse and her doctor. She also testified regarding another specific incident which occurred on a camping trip. The defendant pulled her out of the camper where the children were sleeping, drove her to another part of the campsite, and raped her anally, orally, and vaginally. The victim also testified in general terms regarding their relationship, stating that the defendant had been initially kind, then had grown worse over time. She testified that early in the abuse he would apologize afterwards, but eventually the apologies ceased.

The defendant objected to the state's proposed uncharged misconduct evidence. The court overruled the objection and permitted the state to present the evidence. Before the state presented the evidence to the jury, the court provided limiting instructions that the evidence was being admitted to prove intent, motive, and a system of criminal activity, and could not be used for propensity.[4]

"When instances of a criminal defendant's prior misconduct involve the same victim as the crimes for which the defendant presently is being tried, those acts are especially illuminative of the defendant's motivation and attitude toward that victim, and, thus, of his intent as to the incident in question." (Internal quotation marks omitted.) *State* v. *Kantorowski*, 144 Conn. App. 477, 488, 72 A.3d 1228, cert. denied, 310 Conn. 924, 77 A.3d 141 (2013). Likewise, an escalating pattern of violence directed at a specific individual is relevant to prove a system of criminal activity on the part of the defendant. See *State* v. *Vega*, 259 Conn. 374, 397–98, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse

the emotions of the jur[ors]." (Internal quotation marks omitted.) *State* v. *Pena*, 301 Conn. 669, 675–76, 22 A.3d 611 (2011). Where "[t]he uncharged misconduct evidence [is] not as extreme as the charged crime [and] . . . [t]he court also [gives] a limiting instruction immediately," the prejudicial impact is lessened and the evidence is more likely admissible. *State* v. *Smith*, 313 Conn. 325, 342, 96 A.3d 1238 (2014); see *State* v. *Franko*, 142 Conn. App. 451, 466, 64 A.3d 807, cert. denied, 310 Conn. 901, 75 A.3d 30 (2013).

In this case, the victim was the target of all prior uncharged misconduct and the evidence was highly relevant to motive, intent, and a system of criminal activity. It demonstrated the place of the charged incidents within the larger history of the defendant's treatment of the victim, and it showed the defendant's long-term use of physical and sexual violence to intimidate and control the victim. The court limited any potential prejudicial impact by providing limiting instructions both when the testimony was presented and in its charge to the jury. In doing so, it ensured that the jury would use the prior uncharged misconduct evidence only for its proper purpose, and, therefore, that the evidence would not be unfairly prejudicial. See *State* v. *Grenier*, supra, 257 Conn. 810 (jury presumed to follow curative instructions). Finally, the uncharged acts were no more inflammatory than the charged acts. The court, therefore, was within its discretion to determine that the evidence was relevant to a proper purpose and that its probative value outweighed its prejudicial effect.[5]

When instructing the jury regarding the prior sexual misconduct evidence, the court was not required to bar the jury from considering whether that evidence demonstrated a propensity to commit the charged crimes. See *State* v. *DeJesus*, supra, 288 Conn. 476. Therefore, in evaluating the court's decision regarding the probative value versus the prejudicial effect, we need not consider any prejudice caused by the jury considering the evidence as propensity evidence. We conclude that, given its significant probative value, the court's limiting instruction, and the fact that the evidence was no more inflammatory than the acts with which the defendant was charged, the court was well within its discretion to admit the uncharged sexual misconduct evidence.

Finally, we will briefly discuss the evidence regarding two incidents which were attenuated in time from the charged incidents. The physical assault in 2005 and the sexual assault in 2006 occurred a significant time before the charged conduct. Attenuation in time is a relevant consideration for barring uncharged misconduct, but this evidence, nonetheless, had sufficient probative value in that these incidents demonstrated the defendant's escalating abuse of the victim. See *State* v. *Kant-*

*orowski*, supra, 144 Conn. App. 490 n.5 (no lapse of time has been determined per se too remote). In addition, rather than being isolated, attenuated incidents, they marked the start of a continuous pattern of abuse. The court did not abuse its discretion in admitting this evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interest of victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] At trial, the defendant claimed that the police officer's statement was irrelevant; on appeal, he claims that the testimony was barred by the United States Supreme Court case of *Doyle* v. *Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), which held that impeachment of a defendant by evidence of his silence after arrest and receipt of *Miranda* warnings violates due process. The record in this case lacks any reference to whether any warnings were given pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), therefore, we are unable to determine whether a *Doyle* violation occurred. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), modified by *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015). We will analyze whether the court should have granted the defendant's motion for a mistrial because irrelevant evidence was admitted. In so doing, we assume, but do not decide, that the testimony was in fact irrelevant.

[3] The defendant suggests that we follow the United States Court of Appeals for the Fifth Circuit in *United States* v. *Banegas*, 600 F.3d 342, 347 (5th Cir. 2010), and shift to the state the burden of demonstrating that the shackles were not visible to the jury. Our Supreme Court recently dealt with a similar claim in *State* v. *Brawley*, supra, 321 Conn. 591–92 n.3. Our Supreme Court noted that the Fifth Circuit based its decision on *Deck* v. *Missouri*, 544 U.S. 622, 635, 125 S. Ct. 2007, 161 L. Ed. 2d 953 (2005), in which the United States Supreme Court held that "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." (Internal quotation marks omitted.) Our Supreme Court concluded that "*Deck* makes clear that a heightened burden falls on the state when the unwarranted restraints *are visible* to the jury, and not when, as in *Banegas*, the record is silent on the matter." (Emphasis in original.) *State* v. *Brawley*, supra, 321 Conn. 592 n.3. It therefore rejected the burden shifting analysis of the Fifth Circuit in *Banegas*.

[4] The trial court's limiting instruction regarding the evidence of prior uncharged physical abuse was as follows: "Ladies and gentlemen, the evidence that you heard, and you may hear, about the prior physical abuse of [the victim] by [the defendant] is offered for the sole purpose of proving intent with regard to the fifth count, charging assault in the second degree, and proving both motive and a system of criminal activity with regard to counts one through four, charging sexual assault in cohabitation.

"The evidence of—this evidence of prior bad acts or misconduct by [the defendant] is not being admitted to prove his bad character, propensity, or criminal tendencies and may not be used for that purpose. Such evidence is being admitted solely to show intent, motive, and a system of criminal activity by him with regard to [the victim]."

The trial court's limiting instruction regarding the evidence of prior uncharged sexual abuse was as follows: "Ladies and gentlemen, the evidence you're about to hear concerning prior sexual abuse of [the victim] by [the defendant] prior to November of 2012 is offered for the sole purpose of proving motive and a system of criminal activity with regard to counts one through four charging sexual assault in cohabitation.

"This evidence of prior bad acts or misconduct by [the defendant] is not being admitted to prove his bad character, propensity, or criminal tendencies and may not be used for that purpose. Such evidence is being admitted solely to show motive and a system of criminal activity by him with regard to [the victim]."

[5] In addition, as the state correctly argues, there is an additional require-

ment that the defendant prove that improperly admitted evidence caused harm. If the evidence had been improperly admitted, the defendant was further required to demonstrate that its admission likely was not harmless. This would be a separate inquiry performed in view of the totality of the evidence presented. The defendant failed to perform this analysis. See *In re James O.*, supra, 160 Conn. App. 527–28.

---